UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALJIT SINGH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AGUILERA NICOLAS, et al.,<br><br>　　　　　Defendants. | No. 2: 18-cv-1852 KJM KJN P<br><br>ORDER AND FINDINGS AND <u>RECOMMENDATIONS</u> |

I. <u>Introduction</u>

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds against defendants Austin and Aguilera. Defendants are represented by separate counsel.

Pending before the court is defendant Austin's motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies prior to filing this action. (ECF No. 33.) Also pending is plaintiff's motion to file an amended complaint. (ECF No. 38.)

For the reasons stated herein, the undersigned recommends that defendant Austin's summary judgment motion be granted and plaintiff's motion to amend be denied.

II. <u>Legal Standard for Summary Judgment</u>

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the

1

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on October 4, 2018 (ECF No. 12), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*);

Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III. <u>Legal Standard for Exhaustion of Administrative Remedies</u>

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007); <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." <u>Booth v. Churner</u>, 532 U.S. 731, 736, 741 (2001); <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1857, 1859 (2016). The exhaustion requirement applies to all prisoner suits relating to prison life. <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. <u>Woodford v. Ngo</u>, 548 U.S. 81, 90-91 (2006).

As the U.S. Supreme Court explained in <u>Ross</u>, 136 S. Ct. at 1856, regarding the PLRA's exhaustion requirement:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.... [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."

<u>Id.</u> (internal citations omitted).

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. <u>Reyes v. Smith</u>, 810 F.3d 654, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain

4

management committee's involvement in the decision-making process).

IV. Discussion

    A. Background

    This action proceeds on the original complaint against defendants Dr. Nicholas Aguilera and California Medical Facility ("CMF") Chief Executive Officer Lori Austin. (ECF No. 1.) Plaintiff alleges that defendant Aguilera failed to properly treat plaintiff's skin disorder. Plaintiff alleges that in July 2017, defendant Aguilera told plaintiff to use hydrocortisone cream on his left eye. Plaintiff alleges that the hydrocortisone cream made his eye more irritated and worse. Plaintiff alleges that on August 22, 2017, defendant Aguilera told plaintiff to stop using the hydrocortisone cream. On November 30, 2017, defendant Aguilera prescribed Desonide cream which made plaintiff's eye worse. Plaintiff alleges that plaintiff made several requests to see a skin doctor, but defendant Aguilera "doesn't seem to care." Plaintiff alleges that defendant Austin failed to look into plaintiff's complaints during the administrative grievance process.

    Because plaintiff is proceeding pro se, he is afforded the benefit of the prison mailbox rule. See Houston v. Lack, 487 U.S. 266, 276 (1988). The complaint contains no proof of service. Under the prison mailbox rule, the date plaintiff signed the complaint will be considered his filing date absent evidence to the contrary. See Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other grounds by Pace v. DiGuglielmo, 544 U.S. 408 (2005) (date petition is signed may be considered earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule). Accordingly, plaintiff filed his complaint on June 24, 2018. (See ECF No. 1 at 6.)

    B. Defendant Austin's Summary Judgment Motion

    Defendant Austin argues that plaintiff failed to exhaust administrative remedies prior to filing this action on June 24, 2018. In support of this argument, defendant cites the following evidence.

    Beginning on September 1, 2017, California Correctional Health Care Services ("CCHCS") implemented a new, statewide Health Care Grievance Program for health care grievances, which contains two levels of review – the institutional level of review, and the final

5

level of review (also called the headquarters level of review). (ECF No. 33-3 at 2.) The new program only applies to health care grievances filed after September 1, 2017. (Id.)

The final level of health care grievance review is the headquarters' level. (ECF No. 33-4 at 3.) Headquarters level health care grievances are processed by the Health Care Correspondence and Appeals Branch ("HCCAB") staff located at CCHCS Headquarters. (Id. at 2.)

Between July 2017 and June 28, 2018, the CMF Health Care Grievance Office received two grievances from plaintiff, nos. CMF HC-17000039 and CMF HC-180000822. (ECF No. 33-3 at 3.)

*Grievance CMF HC-17000039*

Plaintiff submitted CMF HC-17000039 to the CMF Health Care Grievance Office on September 10, 2017. (ECF No. 33-3 at 16.) In this grievance, plaintiff complained that skin irritation under his left eye had not been properly treated. (Id.) Plaintiff requested to be seen by a skin specialist. (Id.) The CMF Health Care Grievance Office received grievance CMF HC-17000039 on September 11, 2017. (Id.) Defendant Austin was the reviewing authority and reviewed the grievance at the institutional level of review. (Id. at 12-13.) Plaintiff was not initially interviewed in connection with this grievance. (Id. at 14.)

On November 13, 2017, the institutional response to grievance CMF HC-17000039 was issued. (Id. at 12-13.) The response, signed by defendant Austin, stated that plaintiff's records indicated that he was seen by Dr. McAllister on October 16, 2017. (Id. at 13.) Plaintiff stated that he had increased darkening under his left eye. (Id.) Plaintiff was diagnosed with post inflammatory hyperpigmentation and was advised to avoid further trauma and rubbing of skin under his eye. (Id.) Defendant Austin found that no referral to dermatology was indicated at that time. (Id.) This response was mailed or delivered to plaintiff on November 14, 2017. (Id. at 14.)

On November 15, 2017, plaintiff appealed the institutional level decision to the HCCAB for a decision at the headquarters level of review. (ECF No. 33-4 at 20.) The HCCAB received the grievance on December 1, 2017. (Id. at 19.) In this grievance, plaintiff wrote that the skin irritation under his left eye had not been properly treated. (Id.)

On March 12, 2018, the HCCAB referred CMF HC-17000039 back to the Health Care Grievance Coordinator at the CMF. (Id. at 23.) The March 12, 2018 memorandum referring the grievance back to CMF stated, in relevant part,

> Your health care grievance package has been forwarded to the Health Care Grievance Coordinator (HCGC) at California Medical Facility for further processing. You may be called for interview. The HCGC has been given instructions to return the original healthcare package to you when completed. You will then have 30 calendar days plus five for mailing from the date of completion to resubmit the entire health care grievance package to the Health Care Correspondence and Appeals Branch for a Headquarters' Level Review.

(Id.)

The March 12, 2018 HCCAB response is signed by S. Gates, Chief of the Health Care Correspondence and Appeals Branch. (Id.) Defendant Austin submitted the declaration of S. Gate in support of the summary judgment motion. In his declaration. S. Gates states that the HCCAB referred grievance CMF HC-17000039 back to the CMF Health Care Grievance Coordinator on March 12, 2018, for an amended decision and requested that plaintiff be interviewed by CMF staff concerning his claims. (Id. at 4.)

The March 12, 2018 memorandum, signed by S. Gates, does not state that CMF HC-17000039 was referred back so that plaintiff could be interviewed, and an amended decision issued. However, because S. Gates prepared the March 12, 2018 memorandum, for purposes of this summary judgment motion, the undersigned accepts the explanation in his declaration as to why the grievance was referred back to CMF.

The CMF Health Care Grievance Office received grievance CMF HC-17000039 from the HCCAB on or about March 12, 2018. (ECF No. 33-3 at 5.) On March 21, 2018, defendant Aguilera interviewed plaintiff regarding the grievance. (Id.) Defendant Austin was the reviewing authority and reviewed grievance CMF HC-17000037 at the institutional level of review. (Id.)

On April 3, 2018, the amended institutional level response was issued. (Id.) The response stated that plaintiff's medications were reviewed with him on March 21, 2018, and there were no "culprit medications" which were known to cause periorbital hyperpigmentation. (Id. at 23.) Defendant Austin wrote that the "condition is cosmetic." (Id.) Defendant Austin wrote that

7

plaintiff was advised to utilize sunscreen/sunblock to protect his skin from excessive sun exposure. (Id.)

The amended institutional-level response was mailed or delivered to plaintiff on April 9, 2018. (Id. at 5, 24.) Plaintiff resubmitted the grievance to the HCCAB for headquarters-level review on or about April 29, 2018. (ECF No. 33-4 at 4, 14.) The HCCAB received the resubmitted grievance on May 4, 2018. (Id. at 4, 13.)

On July 31, 2018, the HCCAB issued its headquarters-level response to grievance CMF HC-17000039. (Id. at 4, 11-12.) The headquarters-level decision was mailed to plaintiff on or about July 31, 2018. (Id. at 4, 14.)

The headquarters-level decision denied plaintiff's request for a referral to a skin specialist. (Id. at 11.) The response stated plaintiff's medications did not cause the hyperpigmentation under plaintiff's eyes. (Id.) The response stated that the condition was a "normal skin variant." (Id.)

*CMF HC-180000822*

On January 4, 2018, plaintiff submitted grievance CMF HC-180000822 at the institution level. (ECF No. 33-3 at 42.) In this grievance, plaintiff wrote that he resubmitted grievance CMF HC-17000039, but had not received a reply. (Id.) Plaintiff wrote that his medical issue had not been resolved. (Id.) Plaintiff wrote that he still needed to see a skin specialist because he had not received proper treatment. (Id.) Plaintiff wrote that one doctor stated that hydroquinone cream would cure it, but he could not issue it. (Id.)

The CMF Health Care Grievance Office received this grievance on January 10, 2018. (Id. at 6, 42.) On February 15, 2018, defendant Aguilera interviewed plaintiff in connection with this grievance. (Id. at 6, 42.) Defendant Austin was the reviewing authority and reviewed this grievance at the institutional level of review. (Id. at 6, 42.)

On February 26, 2018, the institutional level response was issued, which found no intervention was needed with respect to the issues grieved or the treatment that plaintiff had been provided. (Id. at 40-41.) Defendant Austin's response was the same as the April 3, 2018 amended institutional response to grievance CMF HC-17000039. (Id. at 40-41.) The institutional level decision was mailed to plaintiff on February 26, 2018. (Id. at 6, 42.)

8

Plaintiff submitted this grievance to the HCCAB for headquarters-level review on or about March 18, 2018. (ECF No. 33-4 at 4, 41.) In this grievance, plaintiff complained about defendant Aguilera's treatment of his eye. (Id. at 41.) The HCCAB received this grievance on or around March 26, 2018. (Id. at 5, 41.)

On June 14, 2018, the HCCAB rejected this grievance under California Code of Regulations, Title 15, former section 3087.9(a)(6)[1] as being duplicative of CMF HC-17000039. (Id. at 5, 38-39.)

In his declaration, S. Gates states that although the June 14, 2018 letter states, "This decision exhausts your administrative remedies," it only did so with respect to Grievance No. CMF HC-18000082—not grievance CMF HC-17000039. (Id. at 5.) S. Gates states that even though plaintiff attempted to appeal the same issue in both grievances, because grievance CMF HC-17000039 was submitted first, plaintiff was required to exhaust grievance CMF HC-17000039 through the headquarters level of review in order to exhaust his claim of improper skin treatment. (Id.)

*Defendant's Argument*

Defendant Austin moves for summary judgment because plaintiff exhausted grievance CMF HC-17000039 on July 31, 2018, which was after he filed this action on June 24, 2018.

C. Plaintiff's Opposition

On April 1, 2019, plaintiff filed an opposition to defendants' summary judgment motion. (ECF No. 36.) Plaintiff argues that prison officials, including defendant Austin, did not timely respond to his grievances. Plaintiff argues that defendant Austin did not respond to his first level grievances within thirty working days from receipt of the grievances, as required by California Code of Regulations, title 15, § 3084.8(c). Plaintiff argues that his HCCAB grievances were not responded to within sixty days of their submission, as required by regulation. Plaintiff also objects to the HCCAB referring grievance CMF HC-17000039 back to CMF "without taking any consideration for my medical treatment." Plaintiff argues that the HCCAB took eight months to

---

[1] On August 6, 2018, section 3087.9 was renumbered to section 3999.234.

9

reply to HC CMF-17000039, i.e., from the date he submitted it on December 1, 2017, to July 31, 2018.

D. Defendant Austin's Reply

In the reply, defendant Austin responds to plaintiff's argument that grievance CMF HC-17000039 was not timely processed.

California Code of Regulations tit. 15, § 3999.228(i) provides that institutional level responses to health care grievances shall be completed and returned to the grievant within forty-five business days.[2] California Code of Regulations tit. 15, § 3999.230(f) provide that responses to HCCAB grievances are due within sixty business days the grievance is received by the HCCAB.[3]

The regulations define business days as Monday through Friday, excluding State holidays. Cal. Code Regs. tit. 15, § 3999.225(e).[4]

Attached to defendant's reply is a chart containing the timelines and relevant deadlines for CMF HC-17000039. (ECF No. 37 at 4.) The chart is mostly accurate.

The chart correctly states that plaintiff submitted CMF HC-17000039 on September 10, 2017. (Id. at 4.) The chart incorrectly states that the institutional level response to this grievance was sent to plaintiff on November 13, 2017. (Id.) The declaration of Staff Services Analyst McAlpine, submitted by defendants in support of the summary judgment, states that the institutional response was issued November 13, 2017, but mailed to plaintiff on November 14, 2017. (ECF No. 33-3 at 4.) The grievance, itself, also indicates that it was mailed to plaintiff on November 14, 2017. (Id. at 14.)

Forty-five business days from September 10, 2017, is November 11, 2017. November 11, 2017, fell on a Saturday. Therefore, the response was due the following Monday, i.e., November 13, 2017. The response, sent to plaintiff on November 14, 2017, was one day late.

---

[2] On August 6, 2018, former section 3097.3 was renumbered to section 3999.228.

[3] On August 6, 2018, former section 3087.5 was renumbered to section 3999.230.

[4] On August 6, 2018, former section 3087 was renumbered to section 3999.225.

10

The chart correctly states that the HCCAB received plaintiff's grievance on December 1, 2017. (ECF No. 37 at 4.) The regulations do not discuss the timeline for HCCAB to notify the institution when an amended response is due. However, the undersigned reasonably infers that the HCCAB has sixty business days to notify the institution when an amended response is due, as this is the deadline regulations set for HCCAB to respond to grievances.

The chart correctly states that the HCCAB response was due on March 1, 2018, i.e., sixty business days after December 1, 2017. (Id.) The chart correctly states that on March 12, 2018, the HCCAB referred the grievance back to CMF, i.e., 67 business days after December 1, 2018. (Id.)

The chart incorrectly states that CMF had 45 business days to issue an amended response. (ECF No. 37 at 4.) California Code of Regulations, tit. 15, § 3999.230(k) sets forth the procedures for the HCCAB to refer appeals back to the institution for amended responses:

> (k) Amendments. HCCAB shall notify the HCGO and grievant when it is determined a health care grievance response requires amendment.
>
> (1) The HCGO shall complete the amended response and return the health care grievance package to the grievant within 30 calendar days of notice issuance.
>
> (2) The grievant shall have 30 calendar days plus five calendar days for mailing from the amended health care grievance response issue date to resubmit the entire original health care grievance package for a headquarters' level grievance appeal review.

Cal. Code Regs. tit. 15, § 3999.230(k).

Section 3999.230(k)(1) provides that the institution has thirty calendar days to issue the amended response. The notice referring the grievance back to CMF for an amended response was issued on March 12, 2018. The amended institutional response was issued on April 3, 2018, which was less than thirty calendar days from March 12, 2018.

The chart correctly states that the HCCAB received plaintiff's headquarters-level grievance on May 4, 2018. (Id.) The chart correctly states that the HCCAB mailed plaintiff the institutional response on July 31, 2018, which was sixty business days from May 4, 2018.

Defendant argues that the minor delays in responding to plaintiff's grievance, discussed above, did not render plaintiff's administrative remedies unavailable.

11

E. Plaintiff's Sur-Reply

On April 23, 2019, apparently in response to defendant's reply, plaintiff filed a second opposition to the motion for summary judgment. (ECF No. 38.) In this pleading, plaintiff also seeks leave to file an amended complaint and moves for appointment of counsel. (Id.) The undersigned will address the motion to amend and motion for appointment of counsel following the discussion of the summary judgment motion.

The court generally views motions for leave to file a surreply with disfavor. Garcia v. Biter, 195 F.Supp.3d 1131, 1133-34 (E.D. Cal. 2016). However, district courts have the discretion to either permit or preclude a surreply. Id. A district court may allow a surreply to be filed, but only "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." Hill v. England, 2005 WL 3031136 at *1 (E.D. Cal. 2005).

In this Circuit, courts are required to afford pro se litigants additional leniency. E.g., Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012). This leniency, however, does not extend to permitting surreplies as a matter of course and the court is not generally inclined to permit surreplies absent an articulation of good cause why such leave should be granted. Garcia, 195 F.Supp.3d at 1134.

Plaintiff's surreply contains the same arguments made in the opposition. In both pleadings, plaintiff argues that the responses to his appeals were untimely. Plaintiff's surreply cites cases that were not cited in the opposition. Plaintiff argues that these cases stand for the proposition that administrative remedies are deemed exhausted if prison officials do not respond to grievances within the time provided in the regulations. See Ross, 136 S. Ct. at 1859; Brown v. Valoff, 422 F.3d 926, 943 n.18 (9th Cir. 2005); Robinson v. Superintendent Rockview, 831 F.3d 148, 153 (3d. Cir. 2016); Boyd v. Corr. Corp. Am., 380 F.3d 989, 996 (6th Cir. 2004); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir.1999); and Underwood v. Wilson, 151 F.3d 292 (5th Cir. 1998).

The cases cited by plaintiff in the surreply can be distinguished from the facts of this case. Because the undersigned discusses these cases herein, plaintiff's request to file a surreply is granted.

F. <u>Discussion</u>

At the outset, the undersigned finds that grievance CMF HC-180000822 did not exhaust plaintiff's administrative remedies because this grievance was properly rejected as duplicative of grievance CMF HC-17000039. <u>Woodford</u>, 548 U.S. at 84 (a prisoner cannot satisfy the exhaustion requirement "by filing of an untimely or otherwise procedurally defective administrative grievance or appeal.")

Plaintiff received the final decision for CMF HC-17000039 from the HCCAB on July 31, 2018, which was after he filed this action on June 24, 2018. Prisoners are required to exhaust available administrative remedies before filing suit. <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199 (9th Cir. 2002). However, two of the responses to grievance CMF HC-17000039 were untimely, by one and seven days respectively. Defendant argues that these brief delays did not render plaintiff's administrative remedies unavailable. For the reasons stated herein, the undersigned agrees with defendants.

An inmate need not exhaust when circumstances render administrative remedies effectively unavailable. <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1226 (9th Cir. 2010). In <u>Ross v. Blake</u>, the Supreme Court agreed, stating the inmate was only required to exhaust those grievance procedures "that are capable of use to obtain some relief for the action complained of." <u>Ross</u>, 136 S. Ct. at 1859. <u>Ross</u> provided a non-exhaustive list of circumstances where administrative remedies were not capable of use: (1) where the procedure "operates as a simple dead end" because officers are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Id.</u> at 1859-60.

In addition, the Ninth Circuit has held that "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." <u>Andres v. Marshall</u>, 867 F.3d 1076, 1079 (9th Cir. 2017) (per curiam, as amended). In <u>Andres</u>, the inmate filed a 602 grievance regarding alleged excessive force, but never received

a response from prison officials. 887 F.3d at 1077. The Ninth Circuit found that the inmate's administrative remedies were rendered effectively unavailable by defendants' failure to respond to his grievance. Id. at 1078-79.

In Brown v. Valoff, 422 F.3d 926, 943 n. 18 (9th Cir. 2005), the Ninth Circuit also stated that, "like all other circuits that have considered the question, 'we refuse to interpret the PLRA so narrowly as to … permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." In Brown, the Ninth Circuit also stated that, "[d]elay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available." Brown, 422 F.3d at 943 n. 18.

While the cases cited by plaintiff in the surreply generally stand for the proposition that administrative remedies are exhausted when prison officials fail to respond to a grievance, none of the cases cited by plaintiff in the surreply stand for the proposition that a brief delay in responding to a grievance renders administrative remedies unavailable. For example, in Powe v. Ennis, the plaintiff filed his grievance on May 12, 1997. Powe, 177 F.3d at 394. Prison officials had forty days to provide a response. (Id.) After receiving no response, the plaintiff filed his suit on September 30, 1997, "well after the due date for the state to complete response to the step 2 grievance." Id. The Fifth Circuit found that prison officials' failure to respond to the grievance rendered administrative remedies exhausted. (Id.)

In Robinson v. Superintendent Rockview SCI, the Third Circuit found that the prison rendered its administrative procedures unavailable to the inmate when it failed to timely respond to his grievance and then repeatedly ignored his follow-up request for a decision on his claim. Robinson, 831 F.3d at 155. In Foulk v. Charrier, the inmate alleged that prison officials failed to respond to his grievance, which prevented him from exhausting administrative remedies. Foulk, 262 F.3d at 688. The Eighth Circuit found that prison officials' failure to respond to the grievance meant that no further remedies were available. (Id.)

The instant case can be distinguished from the cases cited by plaintiff in the surreply because here, prison officials did not fail to respond to his grievance. Instead, two of the responses to his grievance were briefly delayed.

In the opposition, plaintiff also claims that the HCCAB took no action on his grievance for eight months, in violation of the regulations. However, as set forth above, section 3999.230(k) of Title 15 contains procedures for the HCCAB to send grievances back to the institutions for amended responses. Plaintiff's claim that the HCCAB did not act on his grievance for eight months is without merit.

The undersigned finds that the brief delays in the responses to plaintiff's grievance did not render the appeals process unavailable to plaintiff. The delays were minimal, the grievance was addressed, and plaintiff was able to continue seeking review. While plaintiff's grievance raised a claim regarding medical care, the undersigned does not find that the grievance raised claims which were so time sensitive so that the brief delays rendered remedies unavailable. For these reasons, the one and seven days delay in responding to plaintiff's grievance did not render administrative remedies unavailable. See Zaiza v. Tampien, 2019 WL 1003581 (E.D. Cal. 2019) (brief delay in responding to grievance did not render administrative remedies unavailable).

Because plaintiff filed this action before exhausting administrative remedies, the undersigned recommends that defendant Austin's motion for summary judgment be granted.

V. Motion to Amend

Plaintiff filed a motion to amend and proposed amended complaint on April 23, 2019. (ECF Nos. 38, 39.) The proposed amended complaint contains plaintiff's claims against defendants Aguilera and Austin regarding their alleged failure to treat his skin disorder. (ECF No. 39 at 3.) The proposed amended complaint also contains a claim that defendant Aguilera failed to treat plaintiff's ear infection in 2017. (Id. at 4.) Plaintiff alleges that he exhausted administrative remedies as to both claims. (Id. at 3, 4.)

Defendant Austin filed an opposition to plaintiff's motion to amend. (ECF No. 41.) Defendant Aguilera did not. For the reasons stated herein, the undersigned recommends that the motion to amend be denied.

Plaintiff's original complaint alleged that defendant Aguilera failed to treat plaintiff's ear infection. (ECF No. 1 at 4.) On October 31, 2018, the court dismissed this claim for failure to state a claim, based on plaintiff's failure to exhaust administrative remedies. (ECF No. 15.)

15

In the motion to amend, plaintiff seeks to revive the previously dismissed claim against defendant Aguilera regarding his ear infection because he has now exhausted administrative remedies as to this claim. Plaintiff also apparently believes he can raise the claim that defendants Austin and Aguilera failed to treat his skin condition in an amended complaint filed after he exhausted his administrative remedies.

As discussed above, prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007). If, however, a plaintiff files an amended complaint adding new claims, the plaintiff may proceed on the new claims if those claims were fully exhausted before tendering the amended complaint for filing. Rhodes v. Robinson, 621 F.3d 1002, 1006-07 (9th Cir. 2010). As long as those new claims are fully exhausted at the time the amended complaint is filed, it does not matter whether the new claims arose before or after the date on which the initial complaint was filed; the claims can proceed as long as they are new claims that were not alleged in the initial complaint, and are fully exhausted prior to the filing of the amended complaint. See Cano v. Taylor, 739 F.3d 1214, 1220–21 (9th Cir. 2014) (allowing amended complaint to proceed on new claims that arose prior to the date on which the initial complaint was filed); Akhtar v. Mesa, 698 F.3d 1202, 1210 (9th Cir. 2012) (allowing amended complaint alleging new claims that arose after the initial complaint was filed).

Both of the claims raised in the proposed amended complaint were raised in the original complaint. In other words, the claims raised in the proposed amended complaint are not new claims. For this reason, plaintiff is required to have administratively exhausted these claims before filing this action. Because plaintiff did not administratively exhaust these claims before filing this action, plaintiff's motion to file an amended complaint should be denied.

VI. Plaintiff's Motions for Appointment of Counsel

Plaintiff requests that the court appoint counsel. District courts lack authority to require counsel to represent indigent prisoners in section 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In exceptional circumstances, the court may request an attorney to voluntarily represent such a plaintiff. See 28 U.S.C. § 1915(e)(1). Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

16

When determining whether "exceptional circumstances" exist, the court must consider plaintiff's likelihood of success on the merits as well as the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in declining to appoint counsel). The burden of demonstrating exceptional circumstances is on the plaintiff. Id. Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that warrant a request for voluntary assistance of counsel.

Having considered the factors under Palmer, the court finds that plaintiff has failed to meet his burden of demonstrating exceptional circumstances warranting the appointment of counsel at this time.

VII. Defendant Austin's Motion to Vacate the Discovery and Dispositive Motion Deadlines

Based on the pending summary judgment motion, defendant Austin requests that the court vacate the discovery and dispositive motions deadlines set in the scheduling order filed February 27, 2019. (ECF No. 32.) The discovery deadline is June 21, 2019, and the dispositive motion deadline is September 13, 2019.

Good cause appearing, the discovery and dispositive motion deadlines are vacated as to defendant Austin. These deadlines still apply to defendant Aguilera.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motions for appointment of counsel (ECF No. 36, 38) are denied;

2. Defendant Austin's motion to vacate the discovery and dispositive motion deadlines (ECF No. 40) is granted; these deadlines are vacated as to defendant Austin; and

IT IS HEREBY RECOMMENDED that:

1. Defendant Austin's motion for summary judgment (ECF No. 33) be granted;

2. Plaintiff's motion for leave to file an amended complaint (ECF No. 38) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 16, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Singh1852.fr