UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALJIT SINGH, | No. 2: 18-cv-1852 KJM KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| AGUILERA NICOLAS, et al., | |
| Defendants. | |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds against defendants Austin and Aguilera.[1] Defendants are represented by separate counsel.

On September 30, 2019, the court granted defendant Austin's summary judgment motion on the grounds that plaintiff failed to exhaust administrative remedies. (ECF No. 46.) Pending before the court is defendant Aguilera's motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies prior to filing this action and also on the merits of plaintiff's claims. (ECF No. 45.)

---

[1] Plaintiff identified defendant Aguilera as "Aguilera Nicolas." However, according to defendant's pleadings, defendant's name is Nicholas Aguilera. Accordingly, in these findings and recommendations, the undersigned refers to this defendant as defendant Aguilera.

1

For the reasons stated herein, the undersigned recommends that defendant Aguilera's summary judgment motion be granted.

II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on October 4, 2018 (ECF No. 12), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III. Legal Standard for Exhaustion of Administrative Remedies

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S. Ct. 1850, 1857, 1859 (2016). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

As the U.S. Supreme Court explained in Ross, 136 S. Ct. at 1856, regarding the PLRA's exhaustion requirement:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.... [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."

Id. (internal citations omitted).

////

4

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

IV. Background

This action proceeds on the original complaint. Plaintiff alleges that defendant Aguilera failed to properly treat plaintiff's skin disorder. Plaintiff alleges that in July 2017, defendant Aguilera told plaintiff to use hydrocortisone cream on his skin disorder on his left eye. Plaintiff alleges that the hydrocortisone cream made his eye more irritated and worse. Plaintiff alleges that on August 22, 2017, defendant Aguilera told plaintiff to stop using the hydrocortisone cream. On November 30, 2017, defendant Aguilera prescribed Desonide cream which made plaintiff's eye worse. Plaintiff alleges that plaintiff made several requests to see a skin doctor, but defendant Aguilera "doesn't seem to care." Plaintiff alleges that due to the actions of defendant Aguilera, plaintiff still suffers from a left eye skin disorder that looks like a skin scar.

V. Did Plaintiff Exhaust Administrative Remedies Prior to Filing This Action?

Because plaintiff is proceeding pro se, he is afforded the benefit of the prison mailbox rule. See Houston v. Lack, 487 U.S. 266, 276 (1988). The complaint contains no proof of service. Under the prison mailbox rule, the date plaintiff signed the complaint will be considered his filing date absent evidence to the contrary. See Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other grounds by Pace v. DiGuglielmo, 544 U.S. 408 (2005) (date petition is signed may be considered earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule). Accordingly, plaintiff filed his complaint on June 24, 2018. (See ECF No. 1 at 6.)

Defendant Aguilera argues that plaintiff failed to exhaust administrative remedies prior to filing this action on June 24, 2018. In support of this argument, defendant cites the following

evidence.

A. <u>Defendant's Evidence</u>

Beginning on September 1, 2017, California Correctional Health Care Services ("CCHCS") implemented a new, statewide Health Care Grievance Program for health care grievances, which contains two levels of review – the institutional level of review, and the final level of review (also called the headquarters level of review). (ECF No. 45-3 at 2.) The new program only applies to health care grievances filed after September 1, 2017. (<u>Id.</u>)

Between July 2017 and June 24, 2018, plaintiff submitted two health care grievances that mentioned the conduct at issue in this action, nos. CMF HC-17000039 and CMF HC-180000822. (<u>Id.</u> at 3-4.)

*Grievance CMF HC-17000039*

Plaintiff submitted grievance HC-17000039 on September 10, 2017. (<u>Id.</u> at 28.) In grievance HC-17000039, plaintiff complained that skin irritation under his left eye had not been properly treated. (<u>Id.</u> at 4.) Plaintiff requested to be seen by a skin specialist. (<u>Id.</u>)

On November 13, 2017, the institutional-level response to grievance CMF HC-17000039 was issued and found that no intervention was needed. (<u>Id.</u>) The institutional-level response indicated that plaintiff's health care records were reviewed, he was seen by Dr. McAllister on October 16, 2017, that he was diagnosed with post-inflammatory hyperpigmentation, that he was advised to avoid further trauma and rubbing of his skin under his eye, and that no referral to dermatology was medically indicated. (<u>Id.</u>)

On November 14, 2017, plaintiff appealed the institutional level decision to the Health Care Correspondence and Appeals Branch ("HCCAB") for a decision at the headquarters level of review. (ECF No. 45-4 at 3.) HCCAB received this grievance on December 1, 2017. (<u>Id.</u>) On March 12, 2018, HCCAB referred the grievance back to the California Medical Facility ("CMF") for an amended decision at the institutional level of review. (<u>Id.</u>) HCCAB requested that plaintiff be interviewed by CMF concerning his claims, and that an amended institutional-level decision be issued thereafter. (<u>Id.</u>)

////

6

The CMF Health Care Grievance Office received the grievance from HCCAB on or about March 12, 2018. (ECF No. 45-3 at 5.) On March 21, 2018, defendant Aguilera interviewed plaintiff regarding this grievance. (Id.) On April 3, 2018, CMF issued an amended institutional-level response. (Id.) The amended institutional-level response found that no intervention was needed with respect to the issues grieved or the treatment that plaintiff had been provided. (Id.) The amended institutional-level response was mailed or delivered to plaintiff on April 9, 2018. (Id.)

Plaintiff appealed CMF's amended institutional-level response to HCCAB on or about April 29, 2018. (ECF No. 45-4 at 4.) HCCAB received the resubmitted grievance on May 4, 2018. (Id.)

On July 31, 2018, HCCAB issued its headquarters-level response, which found that no intervention was needed with respect to the issues grieved or the treatment that plaintiff had been provided. (Id.) The headquarter-level decision was mailed to plaintiff on or about July 31, 2018. (Id.)

*CMF HC-180000822*

On January 4, 2018, plaintiff submitted grievance CMF HC-180000822 at the institution level. (ECF No. 45-3 at 5-6.) In this grievance, plaintiff wrote that he resubmitted grievance CMF HC-17000039 but had not received a reply. (Id. at 5.) Plaintiff wrote that his medical issue had not been resolved. (Id.) Plaintiff wrote that he still needed to see a skin specialist because he had not received proper treatment. (Id.) Plaintiff wrote that one doctor stated that "hydroquinone" cream would cure it, but he could not issue it. (Id.)

The CMF Health Care Grievance Office received this grievance on January 10, 2018. (Id. at 6, 42.) On February 15, 2018, defendant Aguilera interviewed plaintiff in connection with this grievance. (Id. at 6, 42.) Defendant Austin was the reviewing authority and reviewed this grievance at the institutional level of review. (Id. at 6, 42.)

On February 22, 2018, the institutional level response was issued, which found no intervention was needed with respect to the issues grieved or the treatment that plaintiff had been provided. (Id. at 6.) The institutional level decision was mailed to plaintiff on February 26, 2018.

(Id.)

Plaintiff submitted this grievance to the HCCAB for headquarters-level review on or about March 18, 2018. (ECF No. 45-4 at 4.) In this grievance, plaintiff complained about defendant Aguilera's treatment of his eye. (Id.) The HCCAB received this grievance on or around March 26, 2018. (Id.)

On June 14, 2018, the HCCAB rejected this grievance under California Code of Regulations, Title 15, former section 3087.9(a)(6)[2] as being duplicative of CMF HC-17000039. (Id.)

In his declaration submitted by defendant in support of the summary judgment motion, HCCAB Chief S. Gates states that although the June 14, 2018 letter states, "This decision exhausts your administrative remedies," it only did so with respect to Grievance No. CMF HC-18000082—not grievance CMF HC-17000039. (Id. at 5.) S. Gates states that even though plaintiff attempted to appeal the same issue in both grievances, because grievance CMF HC-17000039 was submitted first, plaintiff was required to exhaust grievance CMF HC-17000039 through the headquarters level of review in order to exhaust his claim of improper skin treatment. (Id.)

B. Discussion

Defendant Aguilera moves for summary judgment because plaintiff exhausted grievance CMF HC-17000039 on July 31, 2018, which was after plaintiff filed this action on June 24, 2018.

On October 28, 2019, plaintiff filed an opposition to defendants' summary judgment motion. (ECF No. 50.) Plaintiff argues that his grievances filed in HC-17000039 were not timely responded to because it took approximately ten months for him to exhaust administrative remedies. Plaintiff argues that if prison officials had followed the timelines in the regulations for responding to grievances, he would have exhausted his administrative remedies much sooner.

In his opposition to defendant Austin's summary judgment motion, plaintiff also argued that prison officials did not timely respond to his grievances. The undersigned addressed that

---

[2] On August 6, 2018, section 3087.9 was renumbered to section 3999.234.

8

claim in the May 16, 2019 findings and recommendations addressing defendant Austin's summary judgment motion. (ECF No. 42.) The undersigned restates those findings herein:

> California Code of Regulations tit. 15, § 3999.228(i) provides that institutional level responses to health care grievances shall be completed and returned to the grievant within forty-five business days.[3] California Code of Regulations tit. 15, § 3999.230(f) provide that responses to HCCAB grievances are due within sixty business days the grievance is received by the HCCAB.[4]
>
> The regulations define business days as Monday through Friday, excluding State holidays. Cal. Code Regs. tit. 15, § 3999.225(e).[5]
>
> Attached to defendant's reply is a chart containing the timelines and relevant deadlines for CMF HC-17000039. (ECF No. 37 at 4.) The chart is mostly accurate.
>
> The chart correctly states that plaintiff submitted CMF HC-17000039 on September 10, 2017. (Id. at 4.) The chart incorrectly states that the institutional level response to this grievance was sent to plaintiff on November 13, 2017. (Id.) The declaration of Staff Services Analyst McAlpine, submitted by defendants in support of the summary judgment, states that the institutional response was issued November 13, 2017, but mailed to plaintiff on November 14, 2017. (ECF No. 33-3 at 4.) The grievance, itself, also indicates that it was mailed to plaintiff on November 14, 2017. (Id. at 14.)
>
> Forty-five business days from September 10, 2017 is November 11, 2017. November 11, 2017 fell on a Saturday. Therefore, the response was due the following Monday, i.e., November 13, 2017. The response, sent to plaintiff on November 14, 2017, was one day late.
>
> The chart correctly states that the HCCAB received plaintiff's grievance on December 1, 2017. (ECF No. 37 at 4.) The regulations do not discuss the timeline for HCCAB to notify the institution when an amended response is due. However, the undersigned reasonably infers that the HCCAB has sixty business days to notify the institution when an amended response is due, as this is the deadline regulations set for HCCAB to respond to grievances.
>
> The chart correctly states that the HCCAB response was due on March 1, 2018, i.e., sixty business days after December 1, 2017. (Id.) The chart correctly states that on March 12, 2018, the HCCAB referred the grievance back to CMF, i.e., 67 day business days after December 1, 2018. (Id.)

---

[3] On August 6, 2018, former section 3097.3 was renumbered to section 3999.228.

[4] On August 6, 2018, former section 3087.5 was renumbered to section 3999.230.

[5] On August 6, 2018, former section 3087 was renumbered to section 3999.225.

9

The chart incorrectly states that CMF had 45 business days to issue an amended response. (ECF No. 37 at 4.) California Code of Regulations, tit. 15, § 3999.230(k) sets forth the procedures for the HCCAB to refer appeals back to the institution for amended responses:

(k) Amendments. HCCAB shall notify the HCGO and grievant when it is determined a health care grievance response requires amendment.

(1) The HCGO shall complete the amended response and return the health care grievance package to the grievant within 30 calendar days of notice issuance.

(2) The grievant shall have 30 calendar days plus five calendar days for mailing from the amended health care grievance response issue date to resubmit the entire original health care grievance package for a headquarters' level grievance appeal review.

Cal. Code Regs. tit. 15, § 3999.230(k).

Section 3999.230(k)(1) provides that the institution has thirty calendar days to issue the amended response. The notice referring the grievance back to CMF for an amended response was issued on March 12, 2018. The amended institutional response was issued on April 3, 2018, which was less than thirty calendar days from March 12, 2018.

The chart correctly states that the HCCAB received plaintiff's headquarters-level grievance on May 4, 2018. (Id.) The chart correctly states that the HCCAB mailed plaintiff the institutional response on July 31, 2018, which was sixty business days from May 4, 2018.

Defendant argues that the minor delays in responding to plaintiff's grievance, discussed above, did not render plaintiff's administrative remedies unavailable.

\*\*\*\*

F. Discussion

At the outset, the undersigned finds that grievance CMF HC-180000822 did not exhaust plaintiff's administrative remedies because this grievance was properly rejected as duplicative of grievance CMF HC-17000039. Woodford, 548 U.S. at 84 (a prisoner cannot satisfy the exhaustion requirement "by filing of an untimely or otherwise procedurally defective administrative grievance or appeal.")

Plaintiff received the final decision for CMF HC-17000039 from the HCCAB on July 31, 2018, which was after he filed this action on June 24, 2018. Prisoners are required to exhaust available administrative remedies before filing suit. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). However, two of the responses to

grievance CMF HC-17000039 were untimely, by one and seven days respectively. Defendant argues that these brief delays did not render plaintiff's administrative remedies unavailable. For the reasons stated herein, the undersigned agrees with defendants.

An inmate need not exhaust when circumstances render administrative remedies effectively unavailable. Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010). In Ross v. Blake, the Supreme Court agreed, stating the inmate was only required to exhaust those grievance procedures "that are capable of use to obtain some relief for the action complained of." Ross, 136 S.Ct. at 1859. Ross provided a non-exhaustive list of circumstances where administrative remedies were not capable of use: (1) where the procedure "operates as a simple dead end" because officers are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60.

In addition, the Ninth Circuit has held that "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017) (per curiam, as amended). In Andres, the inmate filed a 602 grievance regarding alleged excessive force, but never received a response from prison officials. 887 F.3d at 1077. The Ninth Circuit found that the inmate's administrative remedies were rendered effectively unavailable by defendants' failure to respond to his grievance. Id. at 1078-79.

In Brown v. Valoff, 422 F.3d 926, 943 n. 18 (9th Cir. 2005), the Ninth Circuit also stated that, "like all other circuits that have considered the question, 'we refuse to interpret the PLRA so narrowly as to … permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances." In Brown, the Ninth Circuit also stated that, "[d]elay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available." 422 F.3d at 943 n. 18.

While the cases cited by plaintiff in the surreply generally stand for the proposition that administrative remedies are exhausted when prison officials fail to respond to a grievance, none of the cases cited by plaintiff in the surreply stand for the proposition that a brief delay in responding to a grievance renders administrative remedies unavailable. For example, in Powe v. Ennis, the plaintiff filed his grievance on May 12, 1997. 177 F.3d at 394. Prison officials had forty days to provide a response. (Id.) After receiving no response, the plaintiff filed his suit on September 30, 1997, "well after the due date for the state to complete response to the step 2 grievance." Id. The Fifth Circuit found that prison officials' failure to respond to the grievance rendered administrative remedies exhausted. (Id.)

> In Robinson v. Superintendent Rockview SCI, the Third Circuit found that the prison rendered its administrative procedures unavailable to the inmate when it failed to timely respond to his grievance and then repeatedly ignored his follow-up request for a decision on his claim. 831 F.3d at 155. In Foulk v. Charrier, the inmate alleged that prison officials failed to respond to his grievance, which prevented him from exhausting administrative remedies. 262 F.3d at 688. The Eighth Circuit found that prison officials' failure to respond to the grievance meant that no further remedies were available. (Id.)
>
> The instant case can be distinguished from the cases cited by plaintiff in the surreply because here, prison officials did not fail to respond to his grievance. Instead, two of the responses to his grievance were briefly delayed.
>
> In the opposition, plaintiff also claims that the HCCAB took no action on his grievance for eight months, in violation of the regulations. However, as set forth above, section 3999.230(k) of Title 15 contains procedures for the HCCAB to send grievances back to the institutions for amended responses. Plaintiff's claim that the HCCAB did not act on his grievance for eight months is without merit.
>
> The undersigned finds that the brief delays in the responses to plaintiff's grievance did not render the appeals process unavailable to plaintiff. The delays were minimal, the grievance was addressed, and plaintiff was able to continue seeking review. While plaintiff's grievance raised a claim regarding medical care, the undersigned does not find that the grievance raised claims which were so time sensitive so that the brief delays rendered remedies unavailable. For these reasons, the one and seven days delay in responding to plaintiff's grievance did not render administrative remedies unavailable. See Zaiza v. Tampien, 2019 WL 1003581 (E.D. Cal. 2019) (brief delay in responding to grievance did not render administrative remedies unavailable).

(ECF No. 42 at 10-15.)

For the reasons discussed above, the undersigned finds that plaintiff did not exhaust his administrative remedies with respect to his claim against defendant Aguilera before filing this action. Accordingly, defendant's summary judgment motion on the grounds that plaintiff failed to exhaust administrative remedies before filing this action should be granted.

VI. Is Defendant Aguilera Entitled to Summary Judgment on the Merits of Plaintiff's Claims?

Defendant Aguilera argues that he did not violate plaintiff's Eighth Amendment right to adequate medical care.

////

////

A. Legal Standard for Eighth Amendment Claim

The Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To state a claim a plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett, 439 F.3d at 1096). "Deliberate indifference is a high legal standard," Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted).

Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

Further, "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)). Rather, a plaintiff is required to show that the course of treatment selected was "medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health." Snow, 681 F.3d at 988 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

B. Discussion

Defendant moves for summary judgment on the grounds that plaintiff's skin condition under his left eye was not a serious medical need and, on the grounds that defendant did not act with deliberate indifference when he treated plaintiff for his complaints regarding this skin

13

condition.

*Serious Medical Need*

"Serious medical needs" include "'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992).

Defendant argues that the undisputed facts show that when he examined plaintiff, plaintiff complained of darkening skin under his left eye only. Defendant argues that a reasonable inference from plaintiff's limited complaint is that his skin condition neither caused him chronic or substantial pain nor significantly affected his daily activities. Defendant also argues that plaintiff's skin condition improved despite the alleged improper treatment by defendant Aguilera. For these reasons, defendant argues that plaintiff's skin condition did not constitute a serious medical need.

In support of the argument that plaintiff did not have a serious medical need, defendant cites the allegations in plaintiff's verified complaint, which the undersigned restates herein.

Plaintiff alleges that defendant Aguilera failed to properly treat his "left eye skin disorder." (ECF No. 1 at 3.) Plaintiff alleges that plaintiff alleges that in July 2017, defendant Aguilera prescribed hydrocortisone cream. (Id.) Plaintiff alleges that after using the hydrocortisone cream, his skin condition got more irritated and became worse. (Id.) Plaintiff alleges that defendant Aguilera told plaintiff to stop using the hydrocortisone cream. (Id.) Plaintiff alleges that after that, plaintiff made several requests to see a skin doctor, which defendant Aguilera apparently ignored or denied. (Id.) Plaintiff alleges that on November 30, 2017, defendant Aguilera prescribed Desonide cream, which made his skin condition worse. (Id.) In the complaint signed June 24, 2018, plaintiff alleges that he still suffers from a left eye skin disorder that looks like a skin scar. (Id.)

Defendant also cites portions of plaintiff's deposition testimony in support of the argument that plaintiff did not have a serious medical need. Defendant submitted plaintiff's

entire deposition transcript, which the undersigned has reviewed. In relevant part, plaintiff described his skin condition as dark skin under his left eye. (Deposition Transcript at 23-24.) When asked whether he suffered any pain as a result of the discoloration under his left eye, plaintiff testified,

> A: I'm not really sure about that. Might have been, but …
>
> Q: I'll represent to you that we have some documents that said there was no pain. So I'm just trying to get testimony.
>
> At the time you first met any medical provider with the Department of Corrections with regards to you darkening of you – of the skin underneath your left eye, did you ever make any complaint to anybody that there was – that the discoloration was accompanied with pain?
>
> A: I don't really recall that much.
>
> Q: Okay. So you have –
>
> A: I might have told them, but I don't recall at this point.
>
> Q: Okay. So –and we're asking for your best testimony. So as we sit here today, you don't recall one way or the other whether or not you told any medical provider with the Department of Corrections?
>
> A: I -I believe some time I was having pain and might have mentioned it.

(Id. at 24-25.)

When asked whether any medical provider at the California Department of Corrections ever told him that the dark pigmentation under his eyes affected his vision, plaintiff testified that he did not think so. (Id. at 26.)

When asked how the hydrocortisone cream made his condition worse, plaintiff testified that his skin got darker. (Id. at 40.) Plaintiff testified that the Desonide cream defendant Aguilar prescribed in November 2017 also made his skin condition worse. (Id. at 45-46.)

At his June 10, 2019 deposition, plaintiff was asked if he considered his eye as having any discoloration today. (Id. at 46.) Plaintiff responded, "Well, a little bit when I wash my face, but it's better compared to before." (Id.)

Plaintiff testified that he did not suffer cracking or bleeding due to his skin condition. (Id. at 60-61.) Plaintiff testified that he was able to walk, eat and speak with his skin condition. (Id. at 62.)

For the reasons stated herein, the undersigned herein finds that plaintiff's alleged skin disorder, which plaintiff described at his deposition as darker skin under his left eye, did not constitute a serious medical need.

The evidence discussed above demonstrates that plaintiff's skin condition did not significantly affect plaintiff's daily activities. At his deposition, plaintiff testified that he "might have" suffered some pain and that he believed he had "some pain." This testimony does not demonstrate that plaintiff's skin condition caused plaintiff to suffer chronic or substantial pain. Plaintiff's opposition contains no evidence demonstrating that his skin condition significantly affected his daily activities or caused him to suffer chronic or substantial pain. (ECF No. 50.)

In his opposition, plaintiff argues that his skin condition caused him to suffer mental and emotional pain as well as harassment and embarrassment. (Id. at 50.) At his deposition, when asked if he was attacked because of his skin condition, plaintiff responded, "No, but people will make fun of you and that is what was going on there." (Plaintiff's deposition at 48-49.) Plaintiff has provided no evidence supporting his general claims of harassment based on his skin condition. Plaintiff's feelings of embarrassment caused by his skin condition do not elevate this condition to a serious medical need

Although defendant Aguilera prescribed medication for plaintiff's skin condition, the prescription of medication to treat the skin discoloration under plaintiff's left eye did not raise plaintiff's skin condition to a serious medical need. See Mitchell v. Scott, 2017 WL 958603, at *3 (S.D. Ill. 2017) ("If plaintiff's only complaint pertained to skin discoloration, the court would likely conclude that plaintiff had failed to allege the existence of an objectively serious medical condition."); Johnson v. Sullivan, 2010 WL 2850787, at *2 (E.D. Cal. 2010) (no showing that skin condition constituted serious medical need); Antonelli v. Walters, 2009 WL 921103, at *4 (E.D. Ken. 2009) ("First, while the condition may cause chronic cosmetic side effects, the court cannot conclude that Rosacea constitutes a serious medical condition or serious medical need.").

For the reasons discussed above, the undersigned finds that plaintiff's skin condition did not constitute a serious medical need. For this reason, defendant should be granted summary judgment.

*Deliberate Indifference*

Defendant also moves for summary judgment on the grounds that the medical treatment he provide plaintiff did not constitute deliberate indifference. Defendant argues that the undisputed facts demonstrate that he examined plaintiff twice for his skin condition and, on both occasions, prescribed medication to treat plaintiff's skin condition. Defendant argues that the undisputed facts show that he was responsive to plaintiff's concerns that the hydrocortisone cream made his condition worse. Defendant argues that the gravamen of plaintiff's complaint sounds in negligence because plaintiff claims that defendant prescribed ineffective medication and failed to refer him to a specialist.

Defendant's argument in support of his claim that he did not act with deliberate indifference is persuasive. However, the record contains no evidence regarding why defendant waited until November 2017 to prescribe Desonide cream after discontinuing hydrocortisone cream on August 22, 2017. The undersigned also observes that plaintiff's deposition transcript suggests that another doctor told plaintiff to stay out of sunlight because sunlight could cause his condition to worsen. (Plaintiff's Deposition at 68.) Plaintiff testified that after the hydrocortisone cream and Desonide cream proved ineffective, another doctor told him to use sunblock on his face to treat his skin condition. (Id. at 47.) The record contains no explanation as to why defendant chose the course of treatment he did. Because of these outstanding questions, the undersigned does not reach the issue of whether defendant acted with deliberate indifference.

Defendant also moves for summary judgment on the grounds that plaintiff suffered no harm based on defendant Aguilera's alleged inadequate medical care. The undersigned need not reach this issue because of the other grounds on which defendant should be granted summary judgment.

Accordingly, IT IS HEREBY RECOMMENDED that defendant Aguilera's summary judgment motion (ECF No. 45) be granted on the grounds that plaintiff failed to exhaust

administrative remedies and, on the grounds, that plaintiff did not have a serious medical need.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 27, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Singh1852.fr(2)